[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11264

Non-Argument Calendar

_____

ROY CHAMBERS, JR.,

 Plaintiff-Appellant,

*versus*

SHERIFF TIM POUNDS,
et al.,
THACKSON,
Correctional Officer at Douglasville County Jail,
MIRANDA,
Sergeant at Douglasville County Jail (Unknown Last Name),
JOHN DOE #1,
Major at Douglasville County Jail,
JOHN DOE #2,
Lieutenant at Douglasville County Jail;

2                    Opinion of the Court                    21-11264

All Defendants acting in individual and
official capacity under the color of state law,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-00112-CAP

_____

Before JORDAN, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Roy Chambers, Jr., a Douglas County Jail pretrial detainee, sued jail officials for deliberate indifference under 42 U.S.C. section 1983 for incidents involving an "Officer Thackson," Chambers's escort for state court appearances. The district court dismissed Chambers's pro se complaint for failure to state a claim. Chambers appeals the dismissal. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Chambers was "walking on the sidewalk" when he was "hit by a car." As a result, he suffered "major injuries," including broken legs, difficulty moving his feet, and damage to his head, neck, spine, ribs, and left arm. He also had a heart attack and kidney

failure in the jail and suffers from heart and kidney issues and seizures. According to Chambers, the state "court was aware," from his medical records, that he "was still recovering from multiple surgeries and needed assistance walking and keeping his balance."

In October 2019, on the last day of Chambers's trial, Officer Thackson escorted Chambers "from the third floor courtroom to the holding cell at the bottom floor of the . . . [c]ounty [c]ourthouse." Chambers was walking with "crutches prescribed to him by his doctor." After they arrived at the holding cell, Officer Thackson informed Chambers that Chambers couldn't take the crutches into the cell, and Chambers told Officer Thackson about Chambers's "serious injuries" and how Chambers couldn't walk without the crutches. Officer Thackson "took Chambers['s] crutches from him" anyway.

The holding cell didn't have a camera, so no one could monitor Chambers's medical condition. "There was no one in the holding cell with Chambers, and there was no one in the medical holding cell, which would [have] been a better holding cell to put Chambers in because of his disabilities." Chambers suffered serious injuries and "had to be taken to the hospital." "No one was able to hear Chambers scream for help because his body pain was sever[e]ly increasing and he was having a seizure." Chambers "ended up passing out from the seizure in the holding cell, slamming his head on the floor, [and] reinjur[ing] his broken leg, spine, neck, hips, feet[,] and eyes." Chambers was found "unresponsive" in the cell.

In March 2020, Officer Thackson arranged Chambers's transfer from the jail to the courthouse on a bus that didn't comply with the Americans with Disabilities Act.  Chambers was in a wheelchair.  He "had to crawl out of his wheelchair while handcuffed and shackled and crawl up the stairs of the bus using his butt, legs, back[,] and arms" and "had to crawl off the bus the same way." "Chambers was seriously injured" by this ordeal.[1]

Chambers sued for deliberate indifference under section 1983 and filed an amended complaint before any of the defendants responded.[2]  In his amended complaint, Chambers brought claims against Officer Thackson and Douglas County Sheriff Tim Pounds.[3]  Chambers claimed that Officer Thackson denied him his

---

[1]  Chambers also complained that, in March 2020, Officer Thackson "slam[med] [him] repeatedly up and down on the floor" while Chambers was sitting in a wheelchair.  The district court dismissed these claims as a de minimis use of force.  Chambers doesn't mention these claims on appeal, so he forfeits any argument against their dismissal.  *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc) (explaining that the "failure to raise an issue in an initial brief on direct appeal" operates as "a forfeiture of the issue").

[2]  Chambers also sued under the Americans with Disabilities Act, 42 U.S.C. sections 12101 to 12213, but he doesn't appeal the dismissal of those claims. In his amended complaint, he added claims of intentional infliction of emotional distress and a violation of the Declaration of Human Rights, but those claims also aren't raised on appeal *See Campbell*, 26 F.4th at 873.

[3]  Chambers's amended complaint makes no mention of the additional parties named in his original complaint.

crutches and put him in a holding cell that didn't comply with the Americans with Disabilities Act and that Chambers suffered serious injuries and "had to be taken to the hospital." He also claimed that he "was seriously injured" when he "had to crawl" onto and off a bus "using his butt, legs, back[,] and arms." Chambers alleged that Officer Thackson "violated his constitutional rights."

The magistrate judge screened Chambers's complaint under the Prisoner Litigation Reform Act and recommended dismissal for failure to state a claim. The section 1983 deliberate indifference claims failed, the magistrate judge explained, because Chambers's confinement in the holding cell without his crutches and his transportation on the bus amounted to negligence only.

Chambers objected to the magistrate judge's recommendation. He argued that Officer Thackson knew—from Chambers's medical records, "clearly seen disabilities," and comments to the officer—that Chambers "need[ed] his p[re]scribed crutches with him at all times," and because Officer Thackson knew of Chambers's serious medical need for the crutches when he took them away, Officer Thackson was deliberately indifferent. And he was deliberately indifferent, Chambers continued, because he "failed to check and see if [Chambers] was safe in the holding cell . . . by himself, with no crutches, no emergency call button, [and] no video cameras." Chambers "screamed for help," he said, "but no one was able to hear him." Officer Thackson was also deliberately indifferent, Chambers asserted, because Officer Thackson knew that Chambers "could not walk up and down the stairs" of the bus and

"forc[ed] [him] to crawl up and down the stairs . . . while hand-cuffed and shackled."

The district court adopted the magistrate judge's recommendation over Chambers's objections. The district court agreed that the alleged misconduct was negligence, and not deliberate indifference.

## STANDARD OF REVIEW

We review de novo the district court's dismissal of a complaint for failure to state a claim. *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014). We construe pro se complaints liberally, *id.*, but they must "conform to procedural rules," *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002). "We accept the factual allegations in the complaint as true and view them in the light most favorable to [the plaintiff]." *Saunders*, 766 F.3d at 1266. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## DISCUSSION

Chambers contends that the defendants were deliberately indifferent in denying him medical care and a safe environment because they "knowingly disregarded the excessive risk to [his] health and safety and knew that their disregard would cause [him] serious pain and injury."

To state a claim for deliberate indifference under the Eighth Amendment, an inmate must show: "(1) a substantial risk of

serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the [constitutional] violation." *Brooks v. Powell*, 800 F.3d 1295, 1301 (11th Cir. 2015). The first element requires the plaintiff to establish that, objectively, there was a "strong likelihood," and not just a "mere possibility," of injury. *Id.* (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)). To meet the second element, the plaintiff must show: (1) the defendants' subjective knowledge of the risk and (2) their disregard of the risk (3) "by conduct that is more than mere negligence." *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016).

As an initial matter, we note that "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1220 (11th Cir. 2007). "Once an amended pleading is interposed, the original pleading no longer performs any function in the case." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2016). And under Federal Rule of Civil Procedure 15, a plaintiff has a right to amend a complaint once as a matter of course if no responsive pleading has been filed. *Coventry First, LLC v. McCarty*, 605 F.3d 865, 869 (11th Cir. 2010). Chambers's amended complaint is, therefore, the operative complaint in this action, so our review will focus only on the allegations in that pleading that Chambers raises on appeal.

In his amended complaint, Chambers named two parties as defendants, but he didn't attribute any acts or omissions to anyone

except Officer Thackson. Thus, the complaint could support only Officer Thackson's individual liability, if anyone's. And Chambers didn't allege a policy or custom, as necessary to hold the defendants liable in their official capacities. *See Jones v. Cannon*, 174 F.3d 1271, 1292 (11th Cir. 1999) (showing that an official capacity claim requires that a policy or custom be "the moving force behind" the alleged constitutional violation).

As to the October 2019 incident, Chambers claimed that he reminded Officer Thackson of his "serious injuries" and that he couldn't walk without his crutches. But Chambers didn't specify what Officer Thackson knew about his injuries, other than that he suffered from them. Thus, he failed to show that Officer Thackson was subjectively aware that removing his crutches entailed a substantial risk of serious harm.[4]

Chambers also failed to establish that Officer Thackson's alleged misconduct amounted to more than mere negligence. Taking away Chambers's crutches would leave him without a way to move around, obviously, but Chambers was in a holding cell, so he couldn't move around. *See Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) (finding no deliberate indifference when prison officials denied the plaintiff access to his crutches). Nor did the cell's lack

---

[4] On appeal, Chambers says that he told Officer Thackson "what would happen to his body if he tried to walk without his crutches"—namely, that "the pain in his body would trigger his seizures," potentially causing him to black out. But these allegations don't appear in the amended complaint.

of an emergency call button and monitoring equipment rise to the level of deliberate indifference. *See Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1580–82 (11th Cir. 1995) (finding no deliberate indifference when a jailer "fail[ed] to check on" a small, overcrowded cell between 9:30 P.M. and the end of his shift at midnight, the plaintiff was "punched and kicked . . . repeatedly without provocation" by two other inmates in the cell during that time, and the plaintiff's "yell[s] for help during the beating . . . received no response from" the jailer).

As to the March 2020 incident, Chambers made no allegations regarding Officer Thackson's conduct whatsoever. In his amended complaint, he claimed only that, while under Officer Thackson's supervision, he "had to crawl out of his wheelchair while handcuffed and shackled and crawl up the stairs of the bus using his butt, legs, back[,] and arms" and "had to crawl off the bus the same way." Chambers didn't allege Officer Thackson's subjective knowledge that climbing onto and off the bus in that way would entail a substantial risk of serious harm. Nor did he claim that he requested a wheelchair-compliant bus, that he asked Officer Thackson for assistance in getting onto or off the bus, or that any force was applied to require Chambers to crawl onto the bus or remove him from his chair.[5] Chambers even acknowledged that

---

[5] In his original complaint and his brief on appeal, Chambers claims that Officer Thackson forced him to leave his wheelchair and crawl onto and off the bus. But this allegation of force is absent from the operative complaint.

he specifically asked Officer Thackson to let him travel back to the jail on the same bus with the last group of inmates and that, after Officer Thackson initially refused, he was allowed to do so.  And it's not immediately obvious from Chambers's conclusory allegations that a crawl so brief, if also arduous and recurring, likely would result in additional injury.

Even if we infer Officer Thackson's subjective knowledge from the amended complaint, Chambers's crawling onto and off the bus stairs didn't meet the "high bar" for deliberate indifference. *Swain*, 961 F.3d at 1285–86 ("As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar. . . . Ordinary malpractice or simple negligence won't do; instead, the plaintiff must show subjective recklessness as used in the criminal law." (quotation omitted)).  Indeed, the facts of this case are similar to those of *Turner v. Mull*, where the court found "no constitutional violation" when a mobility-impaired plaintiff "was transported . . . in a non-wheelchair-accessible van" that he could enter only "by crawling into it."  784 F.3d 485, 487–88, 491 (8th Cir. 2015).  This case also stands in contrast to *Pearson v. Prison Health Service*, 850 F.3d 526, 537 (3d Cir. 2017) (holding that a plaintiff who claimed that he was "forced" to crawl to his wheelchair created "a genuine dispute as to whether [the defendant] acted with deliberate indifference"), which is cited by the dissenting opinion.  Unlike the plaintiff in *Pearson*, Chambers's amended complaint didn't allege that Officer Thackson forced him to crawl into and out of his wheelchair.

Because Chambers insufficiently alleged that the October 2019 and March 2020 incidents amounted to deliberate indifference, the district court didn't err in dismissing his complaint for failure to state a claim.

**AFFIRMED.**

21-11264 Jordan, J., Concurring in part and Dissenting in part    1

JORDAN, Circuit Judge, Concurring in part and Dissenting in part.

I concur in all of the court's opinion with one exception. That exception is the affirmance of the dismissal of Mr. Chambers' Eighth Amendment claim against Officer Thackson based on the March 2020 bus incident. As to that claim I respectfully dissent.

Mr. Chambers—who needed crutches, and who had told Officer Thackson five or six months earlier about his medical situation—alleged that Officer Thackson forced him to get out of his wheelchair and crawl on and off the stairs of the prison bus "on his butt, legs, and arms while handcuffed and shackled." He also alleged that he suffered serious injuries from having to do this.

The court affirms the dismissal of this claim on two grounds. First, the court says that Mr. Chambers did not allege Officer Thackson's subjective knowledge that forcing him to climb on and off the bus in that way would entail a substantial risk of harm, and that it's not immediately obvious that a crawl so brief would likely result in additional injury. Second, the court concludes that even if we were to infer Officer Thackson's subjective knowledge, making Mr. Chambers crawl off and on the bus did not amount to deliberate indifference. At the Rule 12(b)(6) stage, I disagree.

Mr. Chambers was in a wheelchair, and people who need a wheelchair have ambulatory problems of some sort. Those problems are exacerbated when the person who requires the wheelchair is handcuffed and shackled. It is plausible that Officer Thackson, who of course knew that Mr. Chambers was in a wheelchair, and

2    Jordan, J., Concurring in part and Dissenting in part  21-11264

who previously had been made aware of his medical situation, would understand that forcing him to crawl off and on the bus on his behind, legs, and arms would likely cause significant injury. *Cf. Pearson v. Prison Health Service*, 850 F.3d 526, 537 (3d Cir. 2017) ("Pearson's claim that he was forced to crawl to the wheelchair creates a genuine dispute as to whether Nurse Rhodes acted with deliberate indifference.  Viewing the record in Pearson's favor, as we must, Nurse Rhodes forced a patient, who had been screaming in pain for several hours, to crawl to a wheelchair despite indicating that he was unable to walk. We do not believe that additional evidence is required for a reasonable jury to conclude that this conduct violates a professional standard of care or that such conduct entails the obduracy and wantonness that is proscribed by the Eighth Amendment.").  Rather than rely on *Turner v. Mull*, 784 F.3d 485, 487-88, 491 (8th Cir. 2015), I would look for guidance to the Eighth Circuit's earlier decision in *Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980) (allegation that prison officials failed to give bedridden defendant a wheelchair, thereby forcing him to "crawl on the floor," was sufficient to state an Eighth Amendment claim for cruel and unusual punishment).